1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COMPASS BANK, | ) | Civil No. 13-CV-0654-BAS (WVG) |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING DEFENDANT'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS AGAINST PLAINTIFF |
| MORRIS CERULLO WORLD EVANGELISM, | ) | |
| Defendant. | ) | [DOC. NO. 109] |

# I. INTRODUCTION

## A. PROCEDURAL BACKGROUND

On March 17, 2015, Defendant Morris Cerullo World Evangelism ("Defendant") filed a Motion for Evidentiary Sanctions against Plaintiff Compass Bank ("Plaintiff"). (Doc. No. 109.) Specifically, Defendant claims that Plaintiff engaged in spoliation of evidence by failing to preserve a recorded telephone call ("the subject call") between Ms. Geraldine Gurley, Plaintiffs' Federal Rule of Civil Procedure ("Rule") 30(b)(6) designee, and Mr. Jack Wilkinson, Plaintiff's former branch manager and defaulted Defendant to the instant lawsuit. (Doc. No. 109-1 at 5.) Defendant claims that Plaintiff had a duty to preserve what it knew or should have known would be relevant evidence, and that Plaintiff's failure to preserve the recorded call amounts to willful spoliation of evidence. Id. Defendant seeks terminating

1   sanctions against Plaintiff, or in the alternative, Defendant asks that the Court adopt an

2   adverse inference instruction against Plaintiff, establishing that Mr. Wilkinson admitted to

3   issuing the letter of credit at the center of this litigation. Id. at 16.

4        On March 19, 2015, the Court issued an Order Setting Briefing Schedule and Motion

5   Hearing. (Doc. No. 114.) On March 26, 2015, Plaintiff filed a Response in Opposition to

6   Defendant's Motion. (Doc. No. 134.) On April 2, 2015, at 9:00 a.m., the Court held an in-

7   person Hearing on Defendant's Motion. Mr. Ernest Wagner and Mr. Patrick Kane appeared

8   on behalf of Plaintiff, and Mr. Steven Blake and Mr. Louis Galuppo appeared on behalf of

9   Defendant. Defense representative, Mr. Lynn Hodge, was also present in the undersigned's

10  courtroom for the Motion Hearing.

11       **B. FACTUAL BACKGROUND**

12           **1. MS. GURLEY'S DEPOSITION TESTIMONY**

13       During discovery in this case, Defendant issued two sets of document requests which

14  included all audio recordings relating to a letter of credit at the center of the dispute,

15  allegedly issued on behalf of Plaintiff by Mr. Wilkinson. Plaintiff did not produce any audio

16  recordings during discovery. On February 12, 2015, Defendant took the deposition of Ms.

17  Gurley, Plaintiff's Rule 30(b)(6) witness. At her deposition, Ms. Gurley stated that during

18  a phone call with Mr. Wilkinson in February of 2013, Mr. Wilkinson admitted that he issued

19  the letter of credit. Ms. Gurley testified that during the call she asked, "What did you do?"

20  "You have no authority to issue letters of credit." She testified that Mr. Wilkinson

21  responded, "Well, I issued it. It's done." Ms. Gurley testified she was upset that Mr.

22  Wilkinson issued the letter of credit without any authority, and that she chastised him for

23  issuing the letter of credit.

24       Ms. Gurley also testified that Plaintiff automatically records all of her phone calls in

25  the regular course of business, and automatically records the calls of all Plaintiff's Trade

26  Service Division officers. During her deposition, Ms. Gurley stated, "our lines in

27  international trade services and the letter of credit are recorded 24/7."

28

Defendant learned of the audio recordings for the first time while deposing Ms. Gurley, and immediately requested that Plaintiff produce the audio recording of the subject call.  In a letter dated March 6, 2015, Plaintiff informed Defendant that it could not locate any such recording.

Mr. Wilkinson was deposed after Ms. Gurley's deposition.  He testified that he could not remember the subject call.  Mr. Wilkinson has been an unreliable witness in this case due to alleged untruthfulness and health problems.

## 2. **DEFENDANT'S DISCOVERY REQUESTS**

On April 21, 2014 and October 16, 2014, Defendant propounded Requests for Production of Documents ("RFPs") Sets One and Two on Plaintiff.  Defendant's first set of RFPs sought: "any and all documents supporting your allegation[s]," "documents referencing… efforts to authenticate the signature of Wilkinson," "referencing Wilkinson's employment history," and "containing communications occurring between January 1, 2012 and the present, between you and Wilkinson."  Defendant's second set of RFPs sought: "Any and all documents… related to the termination of Wilkinson," and "related to any investigations conducted by you, including but not limited to any reports, interviews, witness lists, exhibit lists, or memorandums."

In Defendant's RFPs Set One, it set forth the definition of "Document," which included "all internal communications," "discussions," "conversations," "telephone conversations," "transcriptions," "whether transcribed by hand or by some mechanical, electronic… or other means, as **well as sound reproductions of oral statements or conversations by whatever means made**."  (Doc. No. 109-2 at 32) (emphasis added).  Further, Defendant indicated that the definition of "YOUR" meant "COMPASS BANK, its agents, employees, employers, insurance companies, attorneys, accountants, investigators, predecessors-in-interest, successors-in-interest and anyone else acting on its behalf." Id. at 33.

//

//

Specifically, Defendant's RFPs Set One sought:

14.     Any and all documents supporting YOUR allegation that '… local branch employees have no authority to issue standby letters of credit' as alleged in Paragraph 6 of YOUR COMPLAINT."
15.     Any and all documents evidencing that YOUR contention that '… local branch employees have no authority to issue standby letters of credit.'
16.     Any and all documents supporting YOUR allegation that 'Wilkinson … was never authorized to sign standby letters of credit on behalf of Compass.'
38.     Any and all documents containing communications occurring between January 1, 2012 and the present, between YOU and WILKINSON addressing, referencing, or relating to any of the following topics. … f. 'Jack Wilkinson' … i. 'Letter of Credit'

Specifically, Defendant's RFPs Set Two sought:

1.     Any and all documents referencing, concerning, or related to the termination of WILKINSON from COMPASS on or around February 15, 2013.
2.     Any and all documents referencing, concerning, or related to the termination of WILKINSON from BBVA on or around February 15, 2013.

Defendant claims that both sets of discovery requests required Plaintiff to turn over the audio recording of the subject call between Ms. Gurley and Mr. Wilkinson. Plaintiff did not produce or identify any audio recordings involving Mr. Wilkinson in response to either set of RFPs, nor did Plaintiff inform Defendant at any time that it automatically records all of the phone calls in Ms. Gurley's department.

### 3. PLAINTIFF'S SEARCH FOR THE RECORDED CALL

In February and March of 2015, after Ms. Gurley's deposition, Defendant repeated its request for the recording of the subject call. Defendant claims that in response, Plaintiff's counsel stated that he could not find the recordings and did not know how to locate them, yet failed to explain how he attempted to search for the recordings.

Through Plaintiff's Opposition, the Court learned that after Ms. Gurley's deposition, Plaintiff conducted a search of the work phone number listed on Ms. Gurley's letterhead, which was 713-499-8640. However, during the Motion Hearing, the Court learned that Ms. Gurley had another work phone number, which was 713-449-8643. At no time did Plaintiff search this phone number for the subject call or any recorded phone calls related to this litigation.

//

//

4

13CV0654

## II. DEFENDANT'S ARGUMENT

### A. PLAINTIFF FAILED TO PRESERVE RELEVANT EVIDENCE

Defendant argues that parties to litigation have a duty to preserve all evidence that may be relevant, even if they would normally delete the evidence.  It argues that the duty arises even before litigation begins, when litigation is reasonably anticipated.  It argues that a party must take affirmative steps to monitor compliance and place the documents on a litigation hold, and sanctions may be imposed if a party violates this duty.  Defendant asserts that the recording of Mr. Gurley's phone conversation with Mr. Wilkinson in February of 2013 was relevant to this litigation, yet Defendant failed to preserve the recording.

Defendant claims that the subject call is at the heart of this litigation, as Plaintiff argues that it did not issue the letter of credit, yet Ms. Gurley testified that Mr. Wilkinson contradicted that assertion during the subject call.  Defendant notes that while Mr. Wilkinson, a suspect in a criminal investigation, does not admit to issuing the letter of credit nor does he remember the conversation with Ms. Gurley, he was terminated for accepting money from Mr. Christopher Hammatt, another defaulted Defendant to this lawsuit.

At the Motion Hearing, Defendant argued that Plaintiff filed this lawsuit in March of 2013, and the relevant time frame for the litigation is from September of 2012 through February of 2013.  Defendant noted that it presented the letter of credit to Plaintiff one month before the lawsuit was filed, and therefore, Plaintiff had an unqualified duty to preserve evidence for this litigation starting in February of 2013, which is when the subject call occurred.  Defendant argues that while Plaintiff has represented that it was taking steps towards litigation in February of 2013, there is no evidence that Plaintiff's counsel took any action to advise his client of its duty to preserve evidence.

Defendant notes that Ms. Gurley has been in the banking business for over 45 years, and is the person in charge of letters of credit at the Plaintiff bank.  Defendant asserts that Ms. Gurley received phone calls related to this litigation in February of 2013, was named by Plaintiff in the Complaint, and was designated by Plaintiff as a Rule 30(b)(6) witness.  Defendant specifically asked for recordings during discovery, and in the two years since this

case was filed, Defendant was never told that Plaintiff records phone calls. Defendant argues that it is highly prejudiced by not having this evidence.

Defendant argues that Plaintiff has identified two phone numbers for Ms. Gurley, and while Plaintiff has produced redacted records for one of Ms. Gurley's phone numbers, it has failed to produce any records for her other phone number. Thus, Defendant argues, Plaintiff's Opposition is insufficient to show that the subject call did not occur. Defendant argues that the phone records do show that Ms. Gurley made several calls to individuals related to this litigation during the time period that she testified the subject call occurred. Defendant notes that those calls were all made from Ms. Gurley's 8640 number, the number that Plaintiff searched. Defendant asserts that Ms. Gurley called Plaintiff's in-house counsel, a Secret Service Agent, a fraud investigator, and Defense representative Mr. Hodge. Defendant argues that all of those phone calls were recorded by Plaintiff, but Defendant was unaware of the recordings and none were produced. Defendant asserts that it was never told about any of those recordings until it filed the instant Motion.

### B. SANCTIONS REQUESTED

Defendant argues that Plaintiff's Complaint should be stricken, monetary sanctions should be imposed, and default judgment should be entered against Plaintiff. Further, Defendant asks that there be a finding by the Court that Mr. Wilkinson issued the letter of credit. At the Hearing, the Court inquired whether an appropriate sanction for spoliation would be an instruction that the conversation between Ms. Gurley and Mr. Wilkinson did occur and that Mr. Wilkinson told Ms. Gurley that he issued the letter of credit. Defendant responded that sanction was "a step in the right direction, absolutely."

### 1. TERMINATING SANCTIONS

Defendant asks the Court to dismiss Plaintiff's Complaint. It asserts that a finding of willfulness, fault, or bad faith is enough for dismissal, and there is no requirement of a prior order when there was a serious or total failure to respond to discovery. Defendant argues that Plaintiff's destruction of evidence was willful. It notes that Defendant asked for the recordings on multiple occasions, and Plaintiff failed to respond to the discovery requests.

Defendant also argues that Plaintiff's spoliation of evidence prejudiced Defendant. While Defendant notes that this is an optional factor for the Court to consider, it claims that Plaintiff's failure to obey Court Orders compelling compliance with discovery is in itself ample ground for prejudice. Defendant claims it is also prejudiced because Plaintiff has impaired Defendant's ability to go to trial, and it must rely on incomplete evidence because there is no way to recreate the contents of the recording. Defendant contends that the recording would allow for summary judgment and confirm Ms. Gurley's recollection, but without it there may be a triable issue of fact as Mr. Wilkinson cannot remember if he issued the letter of credit.

## 2. ADVERSE INFERENCE JURY INSTRUCTION

In the alternative to terminating sanctions, Defendant asks the Court to prohibit Plaintiff from disputing that Mr. Wilkinson has been found to have issued the letter of credit in Plaintiff's name. However, Defendant does not believe that an adverse inference would be enough to remedy this error because of the substantial unfairness to Defendant.

## III. PLAINTIFF'S ARGUMENT

### A. PLAINTIFF DID NOT LOSE OR DESTROY EVIDENCE

Plaintiff asserts that it did not lose or destroy any evidence, and it has retained all call records and recordings for its International Trade Services department for the last seven years. Plaintiff claims that it conducted a thorough investigation of its records for the past seven years. Along with its Opposition, Plaintiff attached a Declaration of Mr. James Reedy, Plaintiff's custodian of records. In his Declaration, Mr. Reedy states that Plaintiff maintains a call log and a recording of all telephone calls made from Ms. Gurley's telephone number, and retains those records and recordings for a period of seven years. Based upon his review of Ms. Gurley's phone records for those months and an intensive search of Plaintiff's phone recordings for those same months, he asserts that no phone call from Ms. Gurley's phone

13CV0654

1   number was placed to Mr. Wilkinson's work phone or cell phone in January or February of

2   2013.[1/]

3          Plaintiff asserts that there is insufficient evidence to prove that the subject call even

4   existed, let alone that it was subsequently destroyed by Plaintiff.  Plaintiff claims there is no

5   testimony of record that Ms. Gurley made the subject call from her work phone, and after

6   an intensive search of Ms. Gurley's phone records for the months of January and February

7   of 2013, it was revealed that no phone calls were placed to the Temecula branch or Mr.

8   Wilkinson's cell phone.  Plaintiff notes it has sworn under penalty of perjury that it has a

9   company policy to retain all phone records for a period of seven years.  Further, Plaintiff

10  notes that it was Plaintiff's counsel who initially asked Ms. Gurley during her deposition

11  whether Plaintiff may have recorded the call with Mr. Wilkinson.  Plaintiff argues that Mr.

12  Wilkinson testified he does not remember the subject call, and while Defendant argues Mr.

13  Wilkinson is a "proven liar," the trier of fact decides that issue.  Finally, Plaintiff claims that

14  Ms. Gurley's testimony regarding the subject call has been inconsistent and it is the primary

15  fact Defendant relies on for its Motion.  It contends that Ms. Gurley testified Mr. Wilkinson

16  admitted that he issued the fraudulent line of credit, and subsequently Ms. Gurley asked Mr.

17  Wilkinson why he did this and his response was silence.  Although Plaintiff does not dispute

18  that Ms. Gurley maintained that the subject call occurred, Plaintiff argues that Defendant's

19  implications are insufficient.

20         At the Motion Hearing, the Court noted there was no evidence that Ms. Gurley's 8643

21  number was searched, but Plaintiff's custodian of records made conclusory statements that

22  he did an intensive search.  The Court asked why Plaintiff has not spoken to Ms. Gurley to

23  determine which phone lines she typically used to make or receive calls.  Plaintiff responded

24  that it attempted to speak to Ms. Gurley, but has been unsuccessful due to Ms. Gurley's

25  recent health issues.  Of course, this does not excuse Plaintiff's failure to discuss these

26

27

28      [1/] Attached to Plaintiff's Opposition were redacted copies of Ms. Gurley's phone
    records for January and February of 2013, which Plaintiff contends do not reflect any phone
    calls made from Ms. Gurley to Mr. Wilkinson.  (Doc. No. 134-4 at 11-36.)

13CV0654

questions with Ms. Gurley, its employee, much earlier in this case, when she was not experiencing any health problems.

The Court inquired as to whether Plaintiff initiated any type of litigation hold. Plaintiff responded that it is Plaintiff's policy to issue litigation holds, and Plaintiff's counsel understood it to be initiated as a matter of course. Plaintiff's counsel also stated it was his understanding that Plaintiff put a litigation hold in place in this case, but he could not testify first hand because he was not with the law firm representing Plaintiff when the lawsuit was filed.

The Court inquired as to why documentation regarding the call recordings was not produced more than a year ago in Plaintiff's discovery responses. Plaintiff's response was simply that, "in a perfect world" it would have produced the recordings.

Plaintiff argued that, like Defendant, it also learned of the possible recording of the subject call for the first time at Ms. Gurley's deposition. It asserted that it searched Ms. Gurley's 8640 phone number, and there was no such recorded call on that line, therefore the subject call did not occur. Thus, Plaintiff asserts that Defendant has failed to prove that Plaintiff lost or destroyed evidence. Plaintiff contends that it is Defendant's burden to prove that Plaintiff lost or destroyed evidence and although Plaintiff's search may be incomplete, Defendant has not met its burden.

## B. DEFENDANT FAILED TO MEET AND CONFER

Plaintiff argues that the parties listed the recording of the subject call as one of the items in dispute in a February 26, 2015, Joint Discovery Status Report filed with the Court. (Doc. No. 103.) The Court then ordered the parties to engage in an in person meet and confer until all pending discovery disputes were resolved. (Doc. No. 105.) Plaintiff argues that Defendant violated local rules by failing to meet and confer concerning the subject call, and therefore, the Court should deny Defendant's instant Motion.

Plaintiff notes that it completed its investigation of the subject call on March 5, 2014, and on March 6, 2015, Plaintiff's counsel sent correspondence to Defense counsel stating that the subject call could not be located. Since this correspondence, Plaintiff claims that the

13CV0654

parties have met and conferred regarding the status of two depositions, and attended a six hour deposition of Mr. Wilkinson, but the dispute regarding the subject call was not mentioned during either of these in person meetings.

On March 12, 2015, Plaintiff contends that Defense counsel sent Plaintiff's counsel an email alleging that Plaintiff destroyed the recording of the subject call, and threatening sanctions.  Plaintiff argues that Defense counsel did not place a phone call to Plaintiff's counsel or attempt to meet and confer to resolve the dispute.  Plaintiff claims that it requested to meet and confer before Defendant filed its instant Motion, but the parties did not meet and confer.

**C. SANCTIONS ARE NOT APPROPRIATE**

Plaintiff argues that a party moving for sanctions against another has the burden of proving the other party destroyed relevant evidence.  Plaintiff claims that it did not destroy the call recording because the subject call never occurred.  Plaintiff argues that a possible inconsistent statement is not grounds for a discovery sanction.

Plaintiff asks the Court to deny Defendant's Motion, award Plaintiff attorneys' fees expended in responding to the Motion, and provide any additional relief the Court deems appropriate.

**IV. APPLICABLE LAW**

**A. SCOPE OF DISCOVERY**

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Despite the broad interpretation of Rule 26, the scope of discovery is not without limits. <u>Hickman v. Taylor</u>, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The scope of discovery is limited to information that is relevant to a claim or defense in the lawsuit. <u>See</u> Adv. Comm. Notes to 2000 Amendment to Rule 26(b)(1) ("The rule change signals to the court that it has authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

**B. <u>DUTY TO PRESERVE EVIDENCE</u>**

A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. <u>Lopez v. Santoyo</u>, 2012 WL 5427957, at *6 (S.D. Cal. Nov. 7, 2012); <u>see also</u> <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir. 2002). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. <u>Patton v. Wal-Mart Stores, Inc.</u>, 2013 WL 6158467, at *6 (D.Nev. Nov. 20, 2013) (citing <u>In re Napster, Inc. Copyright Litig.</u>, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006).) As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery request. <u>In re Napster, Inc.</u>, 462 F.Supp.2d at 1067.

**C. <u>SPOLIATION OF EVIDENCE</u>**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. <u>Kitsap Physicians Svs.</u>, 314 F.3d at 1001 (citing <u>Akiona v. United States</u>, 938 F.2d 158, 161 (9th Cir. 1991) (a party engages in spoliation only if they had some notice that the documents were potentially relevant to the litigation before they were destroyed).)

A party's destruction of evidence is considered "willful" if the party "has some notice that the [evidence was] potentially relevant to the litigation before [it was] destroyed." Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir.2006) (internal citation omitted).  "Once the duty to preserve attaches, a party must 'suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation.' " Lopez, 2012 WL 5427957, at *7 (citing Brooks v. Felker, 2011 WL 2313021 (E.D. Cal. June 9, 2011) (citation omitted).)  "The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." U.S. Legal Support, Inc. v. Hofioni, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014) (citing Thompson v. U.S. Dep't of Housing & Urban Dev., 219 F.R.D. 93, 100 (D.Md. 2003).)

## D. SANCTIONS

There are two sources of authority under which a district court can sanction a party who has engaged in spoliation of evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery.  Leon, 464 F.3d at 958; Fed.R.Civ.P. 37(b)(2)(A).  Specifically, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."  See Med. Lab Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 824 (9th Cir. 2002) (citing Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).)  Further, Rule 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.  Johnson v. Sisodia, 2015 WL 1746553, at *2 (E.D.Cal. Apr. 16, 2015); citing Wyle v. R.J. Reynolds Indus. Inc., 709 F.2d 585, 589 (9th Cir.1983) (citing Nat'l Hockey League v. Metro. Hockey Clubs, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)).

"'Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment.'" U.S. v. Town of

Colorado City, Ariz., 2014 WL 3724232, *7 (D.Ariz. Jul. 28, 2014); citing Surowiec v. Capital Title Agency, Inc., 790 F.supp.2d 997, 1008 (D. Ariz. 2011).  "While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3) restores the innocent party to their rightful litigation position."  Town of Colorado City, Ariz., 2014 WL 3724232, *7 (citing Id.)  "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence."  Town of Colorado City, Ariz., 2014 WL 3724232, *7 (citing Apple Inc. v. Samsung Electronics Co., 888 F.Supp.2d 976, 992-93 (N.D.Cal. 2012).)

Additionally, the applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence.  Krause v. Nevada Mut. Ins. Co., 2014 WL 496936, at *7 (D.Nev. Feb. 6, 2014); Maxim v. FP Holdings, LP, 2014 WL 200545, at *1; In re Napster, 462 F.Supp.2d at 1072.

## 1. TERMINATING SANCTIONS

The court may impose broad discovery sanctions for failure to obey a court order that compels discovery, up to and including "dismissing the action or proceeding in whole or in part."  Fed.R.Civ.P. 37(b)(2)(A)(v).  Dismissal and default are appropriate only when circumstances evidence willful disobedience of court orders or bad faith conduct.  Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir. 1985).  "'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault."  Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993) (quoting Fjelstad, 762 F.2d at 1341).  The court may consider the party's motivations, and can consider his "dilatory and obstructive conduct" in the case and other related cases.  See Smith v. Smith, 145 F.3d 335, 344 (5th Cir. 1998).

In addition to a finding of willfulness or bad faith, the Ninth Circuit has provided the following five nonexclusive factors that the sanctioning court may use to determine whether case dispositive sanctions are just:

1    (1) The public's interest in expeditious resolution of litigation;
(2) The court's need to manage its dockets;
2    (3) The risk of prejudice to the party seeking sanctions;
(4) The public policy favoring disposition of cases on their merits; and
3    (5) The availability of less drastic sanctions.

Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).

Because "factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, . . . [factors] 3 and 5, prejudice and availability of less drastic sanctions, are decisive." Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998). Further, "factor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." Id. "[W]hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" Id.

## 2. ADVERSE INFERENCE JURY INSTRUCTION

The Court's broad discretionary power includes permitting an adverse inference from the spoliation of relevant evidence against the spoliating party. Krause v. Nevada Mut. Ins. Co., 2014 WL 496936, at *7 (D.Nev. Feb. 6, 2014) (citing Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).)  The rule permitting a jury to draw an adverse inference is based on two rationales. Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 981 (9th Cir. 2009) (citing Akiona v. United States, 938 F.2d 158, 160-161 (9th Cir. 1991).)  The "evidentiary rationale" recognizes the common sense proposition that a party who destroys material relevant to litigation is more likely to have been threatened by the item than someone who does not destroy it. Akonia, 938 F.2d at 161.  The "deterrence rationale" presumes that an adverse inference will deter parties from destroying relevant evidence before it can be introduced at trial. Id.  To justify an adverse jury instruction, the spoliating party's degree of fault and the resulting prejudice to the other party must be significant. Town of Colorado City, Ariz., 2014 WL 3724232, at *7 (citing Apple Inc. v. Samsung Electronics Co., Ltd., 888 F.Supp.2d at 993.

The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence, but has not set forth a precise standard for determining when such sanctions are appropriate.  Trial courts have widely adopted the Second Circuit's three-part test, which provides that,

> a party seeking an adverse inference instruction based on the destruction of evidence must establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)[2]

When applying the spoliation inference, courts are faced with a dilemma.  Apple Inc. v. Samsung Electronics Co., Ltd., 881 F.Supp.2d 1132 (N.D.Cal. 2012).  By the very nature of the spoliation, there is no way to know what the spoliated evidence would have revealed, so courts have to instruct the jury that they are allowed to infer a certain fact or set of facts from the absence of specific evidence.  Apple Inc. v. Samsung Electronics Co., Ltd., 881 F.Supp.2d 1132, 1150 (N.D.Cal. 2012).  With this in mind, courts have formulated adverse inference instructions that range in their level of severity.  Id.

The degree of harshness of the instruction should be dictated by the nature of the spoliating party's conduct - the more egregious the conduct, the more harsh the sanction.  Apple Inc., 881 F.Supp.2d at 1150.   In its most harsh form, when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true.  Id.  At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption.  Id.  At the other

---

[2] Many district courts within the Ninth Circuit have adopted this test.  See, e.g., Io Group Inc. v. GLBT Ltd., 2011 WL 4974337, at *8 (N.D.Cal. Oct. 19, 2011); Vieste, LLC v. Hill Redwood Dev., 2011 WL 2198257, at *2 (N.D.Cal. June 6, 2011); Cyntegra, Inc. v. Idexx Labs., Inc., 2007 WL 5193736, at *2 (C.D.Cal. Sept. 21, 2007); World Courier v. Barone, 2007 WL 1119196, at *1 (N.D.Cal. Apr. 16, 2007); UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.), 462 F.Supp.2d 1060, 1078 (N.D.Cal.2006); AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc., 2006 WL 2308442, at *5 n. 6 (E.D.Cal. Aug. 9, 2006); Hamilton v. Signature Flight Support Corp., 2005 WL 3481423, at *3 (N.D.Cal. Dec. 20, 2005); Housing Rights Ctr. v. Sterling, 2005 WL 3320739, at *7 (C.D.Cal. Mar. 2, 2005).

15

end of the spectrum, the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party. Id. If it makes this presumption, the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party. Id.

## V. COURT DISCUSSION

### A. RELEVANT EVIDENCE EXISTED

Although discovery closed on February 20, 2015, Defendant first learned that Plaintiff records all calls and retains them for seven years on February 12, 2015, a mere eight days before the discovery cutoff. While Plaintiff questioned the relevance of the subject call during the Motion Hearing, the relevance of this evidence cannot reasonably be disputed. Rule 26 states that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). The evidence withheld by Plaintiff goes to the heart of this litigation. One of the main disputes in this case is whether Plaintiff issued the letter of credit. Plaintiff denies issuing the letter of credit and therefore refuses to honor it. Yet eight days before the close of all discovery, Plaintiff's own Rule 30(b)(6) witness testified under oath that she had a telephone conversation with Plaintiff's former branch manager and defaulted Defendant in this litigation, who allegedly issued the letter of credit. She testified that Mr. Wilkinson, while working for Plaintiff, confirmed that he issued the letter of credit. Further, she testified that she chastised Mr. Wilkinson for issuing the letter of credit, as he had no authority to do so.

Plaintiff argues that Ms. Gurley backtracked from her exact testimony, and claims that she is currently unavailable due to health issues. It also contends that Mr. Wilkinson has no recollection of the call, although both parties have previously asserted that Mr. Wilkinson is an unreliable witness, and they have involved the Court with their difficulties in scheduling and conducting his deposition. Plaintiff's arguments lend additional support to the relevancy of the recording. As the parties dispute whether Mr. Wilkinson admitted to issuing the letter of credit and they assert conflicting evidence, there could be no better

evidence than the recording itself.  Based on Plaintiff's arguments in opposition to the instant Motion, it appears that Plaintiff plans to attack Ms. Gurley's credibility and ability to recall accurately.  This is all the more reason why the recording is of paramount importance to Defendant's case.

Ms. Gurley testified that she had a phone conversation with Mr. Wilkinson about the disputed letter of credit.  Plaintiff concedes that her testimony was consistent that such a phone call occurred.  Recently produced phone records reveal that during the same time period that Ms. Gurley claims she spoke with Mr. Wilkinson, she was also involved in several other phone calls related to this case.  The records demonstrate that she spoke with Plaintiff's in-house counsel, a Secret Service agent, a fraud investigator, and Defense representative Mr. Hodge during that time period.  A phone call to Mr. Wilkinson would be entirely consistent with Ms. Gurley's phone activity at that time.  It is entirely reasonable that while speaking to the other individuals related to this case, Ms. Gurley would also want to speak with the individual who allegedly issued the letter of credit.

## B. **PLAINTIFF HAD A DUTY TO PRESERVE THE RECORDING**
### 1. **PLAINTIFF ANTICIPATED THE LITIGATION**

A party must preserve evidence it knows or should reasonably know is relevant to a claim or defense of any party and the duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.  See Lopez v. Santoyo, 2012 WL 5427957, at *6 (S.D. Cal. Nov. 7, 2012); United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002); Patton v. Wal-Mart Stores, Inc., 2013 WL 6158467, at *6.  Ms. Gurley testified that the subject call occurred sometime in early February of 2013.  (Doc. No. 1091 at 6.)  While the subject call occurred prior to Plaintiff filing the Complaint, Plaintiff has previously argued to this Court that it reasonably anticipated litigation regarding the letter of credit in February of 2013.

In a Discovery Brief related to a different dispute and filed by Plaintiff on December 29, 2014, Plaintiff argued that the summary of an interview conducted on February 15, 2013,

with Mr. Wilkinson, before the lawsuit was filed, was work product material because it was prepared in anticipation of litigation.  (Doc. No. 88.)  In support of its argument, Plaintiff claimed that, in a telephone conversation on February 12, 2013, Defendant informed Ms. Gurley that Mr. Wilkinson had previously stated that the letter of credit was valid.  Id. at 3. Plaintiff stated that Defendant then sent written correspondence to Plaintiff requesting that it notify Defendant in writing that it considered the letter of credit to be a fake.  Id.  Plaintiff claimed that Defendant provided a courtesy copy to its counsel.  Id.; Doc. No. 88-3 at 4. Plaintiff asserted that, on February 15, 2013, its internal investigators, working at the behest of in-house counsel, interviewed Mr. Wilkinson concerning his knowledge of the fraudulent letter of credit purporting to bear his signature.  (Doc. No. 88 at 3.)  In a response brief related to the same dispute, Defendant noted that, on February 22, 2013, Plaintiff sent a letter to Defendant advising that Plaintiff would not be honoring the letter of credit.  (Doc. No. 91 at 3.)  On March 19, 2013, Plaintiff initiated the instant litigation.  (Doc. No. 1.)

### 2. PLAINTIFF KNEW THE RECORDING WAS RELEVANT

As discussed above, although Plaintiff half-heartedly argued during the Motion Hearing that it disputed the relevance of the recording, Plaintiff's argument is frivolous.  In early February of 2013, Plaintiff was aware that the parties disputed the legitimacy of the letter of credit purportedly issued by Mr. Wilkinson.  Plaintiff was also aware that Ms. Gurley had spoken with Defense representative Hodge in early February of 2013 regarding the disputed letter of credit.  It was on notice that any conversation between Ms. Gurley and Mr. Wilkinson at that time about the disputed letter of credit would have been highly relevant to the anticipated litigation.  Thus, Plaintiff had a duty to preserve the recording of the subject call.

### C. PLAINTIFF HAD A CULPABLE STATE OF MIND
### 1. PLAINTIFF FAILED TO PRESERVE THE RECORDING

Imposing an adverse inference jury instruction as a sanction for spoliation requires that evidence was lost or destroyed with a culpable state of mind.  Here, while Plaintiff may not have technically lost or destroyed the recording of the subject call, although the Court has

1   not ruled out that possibility, the Court finds that Plaintiff wilfully failed to produce the
2   recording in response to discovery requests, wilfully failed to conduct a diligent search in
3   an effort to locate the recording, and wilfully withheld the recording from Defendant.
4   Plaintiff has effectively lost or destroyed relevant evidence, as it had a duty to preserve the
5   recording and Defendant has no other way to obtain this evidence.  Due to Plaintiff's failure
6   to preserve or produce the recording, Defendant is left to litigate this case without a critical
7   piece of evidence.

8       Surprisingly, Plaintiff claims that it first learned of the subject call during Ms.
9   Gurley's deposition on February 12, 2015.  Had Plaintiff diligently pursued its discovery
10  obligations or simply been naturally curious regarding Ms. Gurley's knowledge, Plaintiff
11  would have learned about this call, or should have known about the call, even before it filed
12  this lawsuit.  However, Defendant asked for this specific information in discovery requests
13  propounded in April of 2014.  At that time, Plaintiff was well aware that it recorded calls,
14  as it apparently recorded all calls of the employees in Ms. Gurley's department.  Therefore,
15  any and all recorded calls related to this case should have been produced in April of 2014.
16  The subject call should have been included in the production.  However, not only did
17  Plaintiff not produce the recording of the subject call or any other calls, it utterly failed to
18  even disclose that such calls were recorded.

19      Moreover, no evidence has been presented to the Court that Plaintiff initiated a
20  litigation hold.  Despite being on notice that Plaintiff's litigation hold would be discussed
21  at the Motion Hearing because it was examined in Defendant's Motion, Plaintiff was totally
22  unprepared to respond to that issue during the Hearing.

23      Plaintiff initiated this lawsuit.  It argued in a previous motion that, with respect to the
24  information surrounding Mr. Wilkinson in February of 2013, anything done by Plaintiff was
25  in anticipation of litigation.   Thus, Plaintiff knew better than anyone that all of this
26  information needed to be preserved.  Moreover, in Plaintiff's Complaint, it identified Ms.
27  Gurley as a key player in the events surrounding this litigation.  Paragraph 10 of Plaintiff's
28  Complaint states,

On February 12, 2013, Geraldine Gurley ("Gurley") of Compass's International Trade Services Department received a call from Lynn Hodge of MCWE ("Hodge"), regarding the Century Bank LOC.  Gurley informed Hodge that Compass had determined the Century Bank LOC was fraudulent and had refused to accept it.  During that same conversation, Hodge referenced a standby letter of credit from Compass for $5.2 million with MCWE as beneficiary.  Gurley informed Hodge that no such standby letter of credit was ever issued by Compass.

(Doc. No. 1 at 3.)

Plaintiff also knew that Mr. Wilkinson was a key player in the events surrounding this litigation, and they ultimately terminated his employment.  Paragraph 12 of Plaintiff's Complaint states, in part, "... Moreover, Compass is informed and believes and thereupon alleges that Wilkinson's purported signature on the Fraudulent Compass LOC is forged." (Doc. No. 1 at 4.)

In April of 2014, when Defendant propounded its discovery requests and asked for all recordings related to the letter of credit, Plaintiff had an obligation to disclose at that time that Plaintiff records all calls, and to produce the relevant recordings.  Yet Plaintiff did not reveal, disclose, or even hint that there were potentially relevant conversations that were recorded as a matter of course.  Instead, Plaintiff was completely silent on that issue.

Defendant issued its second set of RFPs in October of 2014, and again, Plaintiff was silent about any recorded phone calls.  Defendant's RFPs were not ambiguous as to what Defendant was seeking.  Three months later, Ms. Gurley testified very clearly that she had a conversation with Mr. Wilkinson.  There is no dispute about that testimony, and Ms. Gurley has never backtracked from that assertion.  That conversation, regardless of whether it goes as far as Ms. Gurley's testimony revealed, is absolutely important to this litigation.  After Ms. Gurley's deposition, Defendant again asked for the recording and all that it received in response was a conclusory letter from Plaintiff's counsel stating that it could not be located.

Moreover, Plaintiff evaded the Court's questions during the Motion Hearing when asked why it had only searched one of Ms. Gurley's two phone lines.  The Court never received a response to its inquiries.  Equally troubling is that, at no time during the Motion Hearing did Plaintiff represent that it would conduct a search of Ms. Gurley's other phone

line.  Instead, Plaintiff suggested several times that it may be able to solve the problem by using a "reverse engineer" approach to search Mr. Wilkinson's phone records in an effort to locate the subject call.  However, Plaintiff conceded that it had not yet conducted or initiated a search of Mr. Wilkinson's phone records, despite being on notice of the subject call since February 12, 2015 at the latest, nearly two months before the Motion Hearing.

When asked by the Court why Plaintiff waited until after the close of all discovery to search Ms. Gurley's phone line for the first time, Plaintiff responded that it only learned of the possible existence of the recording during Ms. Gurley's deposition on February 12, 2015. The Court finds this explanation to be completely unjustified and spurious, as Plaintiff knew that it recorded all of the phone calls in Ms. Gurley's department from the beginning of this litigation.  Further, Ms. Gurley's role in this litigation was no surprise to Plaintiff, as Plaintiff listed her in its Complaint and designated her as its Rule 30(b)(6) witness.  Defendant requested this specific discovery in April of 2014, and again in October of 2014, yet nothing was produced.  None of this was a surprise to Plaintiff, and if it was, that further supports Defendant's argument that Plaintiff was delinquent in its duty to preserve evidence and to respond to discovery requests.

During the Motion Hearing, Plaintiff repeatedly asserted that it conducted a complete and diligent search of Ms. Gurley's records, and because the subject call did not appear in the records, the call did not occur.  Plaintiff discounts Ms. Gurley's testimony to the contrary, and overlooks the critical fact that it does not have Ms. Gurley's complete phone records.  The Court is confounded as to why Plaintiff only searched one of Ms. Gurley's two phone lines.  The Court is also deeply troubled that Plaintiff could adamantly assert that the call recording does not exist when a diligent search has not been conducted or even attempted.  Plaintiff did not present any evidence that the subject call could not have been made from Ms. Gurley's other phone line.  Plaintiff's search does nothing to prove that the subject call did not occur.  The Court is left with an incomplete search by Plaintiff and the unequivocal testimony of Ms. Gurley that the subject call did occur.  Plaintiff's cavalier approach to Defendant's discovery requests, Defendant's requests for the information after

Ms. Gurley's deposition, and the preparation for the Court's Motion Hearing leads the Court to believe that there is information that Plaintiff does not want Defendant to discover.  The Court finds that Plaintiff's obstructionist behavior and brazen failure to produce relevant evidence in response to discovery amounts to the wilful destruction or loss of evidence.

## 2. PLAINTIFF'S HISTORY OF VIOLATING DISCOVERY OBLIGATIONS

Plaintiff has a history of being recalcitrant and failing to produce relevant discovery. On January 23, 2015, this Court issued a Discovery Order requiring Plaintiff to produce an Interview Summary of Mr. Wilkinson. (Doc. No. 95.)  On December 29, 2014, Plaintiff filed a Discovery Brief in Support of its position that a statement that Mr. Wilkinson gave to Plaintiff during an interview on February 15, 2013, was protected by the work product doctrine. (Doc. No. 88.)  Plaintiff argued that the Interview Summary reflected Plaintiff's investigators' and Plaintiff's counsel's thought processes and mental impressions of what they considered to be the instant litigation's material issues.  (Doc. No. 88 at 2-3, 6-7.)

The Court conducted an *in camera* review of the Interview Summary and found that it was apparent on the face of the document that it was not protected work product material. (Doc. No. 95 at 8.)  In an Order issued on January 23, 2015, the Court strongly disagreed with Plaintiff's claims that the Interview Summary contained material that was prepared in anticipation of litigation.  Id.  The Court noted that the document was simply a factual statement obtained by Plaintiff's Risk Manager and Human Resources staff during what appeared to be a standard employee interview immediately preceding termination.  Id. at 9. The Court noted that, despite Plaintiff's assertions, it was completely devoid of any mental impressions or thought processes of counsel.  Id.

The Court admonished Plaintiff and reiterated its expectation that all counsel and all parties provide true and accurate discovery responses consistent with the sprit of Rule 26. (Doc. No. 95 at 11.)  The Court observed that withholding the Interview Summary under the guise that it was protected by the work product doctrine was clearly an effort by Plaintiff to try, and almost succeed, in suppressing highly relevant and clearly discoverable information.

13CV0654

1   Id.  The Court found that Plaintiff engaged in an intentional effort designed to delay the

2   discovery process and prevent the document from getting into the hands of Defendant.  Id.

3   The Court warned that it would not tolerate such blatant gamesmanship, and stated that

4   Plaintiff was on notice that should the Court become aware of any similar antics throughout

5   the remainder of the discovery period, sanctions would likely issue.  Id.

6        Based on the Court's prior discovery ruling and the information presented in the

7   instant dispute, the Court finds that Plaintiff has demonstrated a pattern of suppressing highly

8   relevant and clearly discoverable evidence.  Plaintiff has not been forthcoming with respect

9   to discovery in the past, and this is more of the same recalcitrant conduct.  Despite its best

10  efforts, Defendant has faced extreme difficulty in obtaining discovery from Plaintiff.  The

11  Court has previously warned Plaintiff to obey the letter and spirit of the Federal Rules, yet

12  Plaintiff has cavalierly disregarded both the spirit of the Rules and this Court's Order.  Ms.

13  Gurley's deposition occurred less than three weeks after this Court issued its ruling regarding

14  the Interview Summary and warned Plaintiff to refrain from engaging in further gamesman-

15  ship.  The Court is deeply disturbed by Plaintiff's blatant disregard of its discovery

16  obligations and this Court's unambiguous Order.

17  **D. SANCTIONS ARE WARRANTED**

18       Defendant requests both monetary sanctions and the use of adverse inference jury

19  instructions.  As described below, both are warranted on the record before the Court.

20  **1. COURT WILL NOT GRANT TERMINATING SANCTIONS**

21       The risk of prejudice to the party seeking sanctions and the availability of less drastic

22  sanctions are the decisive factors in the Ninth Circuit's test to determine whether case

23  dispositive sanctions are justified.  Conn. Gen. Life Ins. Co., 482 F.3d at 1096; Valley

24  Eng'rs, 158 F.3d at 1057.  In analyzing whether less drastic sanctions are available, the court

25  considers whether it explicitly discussed alternative sanctions, whether it tried them, and

26  whether it warned the recalcitrant party about the possibility of dismissal.  Valley Eng'rs,

27  158 F.3d at 1057.

28

23

13CV0654

Here, the Court finds that the risk of prejudice to Defendant is great, as Plaintiff's spoliation of evidence requires Defendant to rely on incomplete evidence. Without the recording, there may be a triable issue of fact as Mr. Wilkinson claims he cannot remember if he issued the letter of credit on behalf of Plaintiff. Defendant has no way to recreate the contents of the recording. Plaintiff argued to this Court that Ms. Gurley's testimony was inconsistent regarding what Mr. Wilkinson actually said during the phone call, and stated that she is currently unavailable due to health issues.

The Court finds that less drastic sanctions are available. The Court has previously warned Plaintiff that continued gamesmanship and attempts to withhold discovery could result in sanctions, however, terminating sanctions were not discussed. To date, the Court has not imposed any sanctions on Plaintiff. In its Motion, Defendant addresses an alternative, less drastic sanction for the Court to consider. Although Defendant believes that terminating sanctions are appropriate in this situation, the Court finds that terminating sanctions are not warranted as there is an appropriate less drastic sanction that can be imposed.

## 2. ADVERSE INFERENCE JURY INSTRUCTION IS AN APPROPRIATE SANCTION

Plaintiff has had one year to produce all of the relevant recordings discussed at the Motion Hearing, and has failed to produce them. Plaintiff was aware of this Motion for 16 days before the Hearing, but did nothing independently to show that it explored other potential sources, such as searching Ms. Gurley's other phone line, Mr. Wilkinson's phone records, Ms. Gurley's cell phone, or at the very least, speaking with Ms. Gurley.

The Court agrees that it was initially Defendant's burden to show that Plaintiff lost or destroyed relevant evidence. However, the Court finds that the circumstances demonstrate that if the subject phone call was not made, Plaintiff had ample opportunity to research its records of other phone lines that would reasonably have been used by Ms. Gurley, ask her if she used her personal cell phone, or searched Mr. Wilkinson's phone records, and it has done nothing. Therefore, although it was initially Defendant's burden, the failure to perform

13CV0654

1    any due diligence to demonstrate that there is no recorded call falls upon Plaintiff.  The Court

2    finds that Defendant has made a prima facie showing that the subject call occurred, that the

3    call was recorded, and that Mr. Wilkinson said what Ms. Gurley testified to during her

4    deposition.

5         Due to Plaintiff's wilful disregard of its discovery obligations, failure to issue a

6    litigation hold, failure to comply with this Court's prior Order, and Plaintiff's cavalier

7    approach to try to remedy the situation and reduce the resulting prejudice to Defendant, the

8    Court declines to order an adverse inference instruction that may be rebutted by Plaintiff.

9    The Court finds that due to Plaintiff's bad faith and wilful spoliation of evidence,  the more

10   appropriate sanction is an adverse inference that cannot be rebutted by Plaintiff.

11        Therefore, the Court recommends to the District Judge that the jury be instructed that

12   Ms. Gurley had a phone conversation with Mr. Wilkinson in February of 2013, and that

13   Wilkinson said exactly what Ms. Gurley testified to during her February 12, 2015,

14   deposition.

15                    **3. <u>MONETARY SANCTIONS</u>**

16        Defendant also seeks monetary sanctions to compensate for the time and expense

17   involved in attempting to obtain the subject call and bringing the instant Motion.  The court

18   may levy monetary sanctions under two sources of authority: the court's "inherent

19   authority," <u>see</u> Leon, 464 F.3d at 961, and under Rule 37 (providing for recovery of fees and

20   costs in motions to compel discovery or for failure to obey an order to provide or permit

21   discovery).

22                         **a. <u>RULE 37</u>**

23        Under Rule 37(b), a court may award monetary sanctions for a party's failure to

24   comply with a court order.  Fed.R.Civ.P. 37(b).  Here, the Court finds that monetary

25   sanctions may be imposed against Plaintiff under Rule 37(b), as Plaintiff clearly violated this

26   Court's January 23, 2015, Discovery Order (Doc. No. 95), in which the Court warned that

27   it would not tolerate Plaintiff's blatant gamesmanship, and admonished that Plaintiff was on

28

notice that should the Court become aware of any similar antics throughout the remainder of the discovery period, sanctions would likely issue.  Id. at 11.

### b. COURT'S INHERENT AUTHORITY

A trial court has the discretion to impose a wide array of sanctions under its inherent authority, and "assessment of attorney's fees is undoubtedly within a court's inherent powers." Chambers v. NASCO, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Under its inherent powers, a district court may award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (discussing a sanction against an attorney).  Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith."  Id.  A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  Id. at 649.  The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Id.  Additionally, the amount of monetary sanctions must be "reasonable."  Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir. 1986), as amended by 803 F.2d 1085 (1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well).

Here, the Court also finds monetary sanctions to be appropriate under the Court's inherent authority due to the evidence presented which demonstrates Plaintiff's delay, disruption of the discovery process and this litigation, gamesmanship, and discovery abuses. See Primus Auto. Fin. Servs., 115 F.3d at 649 ("A party ... demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.' ") (citing Hutto v. Finney, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)) (implicitly overruled on other grounds); see also Leon, 464 F.3d at 961.  To be clear, the Court finds that Plaintiff's wilful disregard of its discovery obligations, failure to issue a litigation hold, failure to comply with this Court's prior Order, and cavalier approach to try to remedy the

1   situation and reduce the resulting prejudice to Defendant, "constituted or was tantamount to

2   bad faith." <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488

3   (1980).

4                    **c. <u>DEFENDANT SHALL SUBMIT BILLING STATEMENTS</u>**

5          In light of the Court's award of monetary sanctions, Defendant shall lodge with the

6   Court detailed time calculations and descriptions of activities in attempting to obtain the

7   recording of the subject call, and for litigating its Motion for Sanctions.  Defendant shall

8   include a Declaration(s) by counsel, and shall lodge these detailed documents with the Court,

9   with a copy to opposing counsel, on or before **May 22, 2015**.

10  **VI. <u>CONCLUSION</u>**

11         The Court finds that Plaintiff wilfully engaged in the spoliation of relevant evidence,

12  and that Plaintiff has demonstrated a pattern of recalcitrant behavior during discovery in this

13  litigation.  Accordingly, as explained above, the Court hereby finds that Defendant's request

14  for an adverse inference jury instruction is hereby GRANTED.

15         The Court also finds that monetary sanctions are appropriate under both Rule 37 and

16  the Court's inherent authority.  Defendant's request for monetary sanctions is hereby

17  GRANTED.  The amount of monetary sanctions imposed against Plaintiff will be determined

18  after the Court's review of Defendant's detailed time calculations and Declaration(s), and

19  after Plaintiff has had the opportunity to respond.  Plaintiff's response shall be filed on or

20  before **June 5, 2015**.

21         Further, Plaintiff has requested attorneys' fees for its time and expenses associated

22  with responding to Defendant's Motion for Sanctions.  (Doc. No. 134 at 9.)  Based on the

23  Court's ruling set forth above, the Court finds no merit in this request, and Plaintiff's request

24  for attorneys' fees is hereby DENIED.

25  IT IS SO ORDERED.

26  DATED:  May 8, 2015

27  _____

28                    Hon. William V. Gallo
                      U.S. Magistrate Judge

27                                                                                      13CV0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13CV0654